

IN THE UNITED STATES DISTRICT COURT
FOR THE EASTERN DISTRICT OF TEXAS
BEAUMONT DIVISION

| | | |
|---|---|---|
| SAMMY RAY ACKER, ET AL. | § | |
| | § | |
| **Plaintiffs,** | § | |
| | § | |
| VS. | § | Civil Action No. _____ |
| | § | |
| QUIGLEY CO. INC. AND | § | **JURY** |
| PFIZER, INC. | § | |
| | § | |
| **Defendants.** | § | |

1 ‡ 0 3 C V 0 2 4 7

## DEFENDANTS' NOTICE OF REMOVAL

TO THE HONORABLE JUDGE OF THE UNITED STATES DISTRICT COURT:

Defendants Quigley Company, Inc. and Pfizer Inc ("Defendants") file, pursuant to 28 U.S.C. § 1441 *et. Seq.* and 28 U.S.C. § 1332, Defendants' Notice of Removal and, in support thereof, show as follows:

### Preliminary Statement

1.  This is a breach of contract/fraud action which Plaintiffs commenced on April 10, 2003. Plaintiff Sammy Ray Acker, amongst many others, ("Plaintiffs") allege that Defendants breached a written contractual settlement agreement with all of the Plaintiffs in cases that were at one time styled *Robert L. Abernathy, et. al. v. A C and S, Inc., et. al.* and *Inez Martin, et. al. vs. A C and S, Inc., et. al.* along with all cases severed therefrom ("contract"). *See attached as Exhibit "A" a true and correct copy of Plaintiffs' First Amended Petition filed on April 10, 2003 at p. 9.* The contract was allegedly entered into by and between the parties with performance to begin on February 15, 2003 and to continue thereafter. *See Exhibit "A" at p. 10.*

2.  On April 10, 2003, Plaintiffs commenced their breach of contract/fraud action by Amending their Petition in the underlying tort action to include a brand new count, Count Seven. *See Exhibit "A" at p.* 9. Five (5) days later, on April 15, 2003, Plaintiffs moved to sever the breach of contract/fraud action from the underlying tort action. *See attached as Exhibit "B" a true and correct copy of Severed Plaintiffs' Petition, Plaintiffs' Motion to Sever Breach of Contract and Fraud Claims against Quigley Co., Inc. and Pfizer, Inc, and Plaintiffs' Motion to Shorten Time on their Motion to Sever Breach of Contract and Fraud Claims against Quigley Co., Inc. and Pfizer, Inc filed on April 15,2003.*

3.  Two (2) days later, on April 17, 2003, the State District Court severed Plaintiffs breach of contract/fraud claims from the underlying tort action. *See attached as Exhibit "C" a true and correct copy of the 60th Judicial District Court's Order severing the breach of contract claim into its own cause of action signed April 16, 2003.*

4.  Defendants seek to remove Plaintiffs' contract/fraud action, pursuant to 28 U.S.C. § 1332, because there is diversity amongst the parties and the amount in controversy exceeds the sum of Seventy-Five Thousand and NO/100 Dollars ($75,000.00).  Defendants seek, pursuant to 28 U.S.C. § 1446, to remove Plaintiffs contract/fraud action within thirty (30) days after the receipt by the Defendants of a copy of the initial pleadings setting forth the claim for relief upon which removal is sought. *See Exhibit "A."*  Further, Defendants seek, pursuant to 28 U.S.C. §1446, to remove Plaintiffs' contract/fraud action within one (1) year from the time the contract/fraud action commenced.

**Factual Background**

5.  Plaintiffs' brought the underlying tort action to recover personal injury damages resulting from the Plaintiffs' alleged exposure to asbestos.  Plaintiffs allege that the parties reached a

compromise on Plaintiffs' tort claims and entered into a written agreement settling those claims for money. *See Exhibit "A."* Plaintiffs further allege that Defendants breached the 2003 Settlement Agreement. *See id.*[1]

6.  Defendants dispute that venue is proper in Texas and whether all parties are properly before the Court for all purposes. Defendants seek removal of the contract/fraud action subject to and without waiving any jurisdictional pleadings and/or defenses which have previously been filed in the state district court.

7.  The contract claim was severed from the underlying tort claim and given its own cause number. *See Exhibit "C."*

8.  The amount in controversy exceeds Seventy-five Thousand and NO/100 Dollars ($75,000.00). Moreover, all parties are diverse for purposes of federal jurisdiction. *See Exhibit "B."*

### Legal Authorities

9.  Removal is proper in diversity of citizenship cases where the amount in controversy exceeds Seventy-five Thousand and NO/100 Dollars ($75,000.00), there is diversity amongst the parties and the parties served as defendants are not citizens of the State in which the action is brought. 28 U.S.C. §1441(b).

10. Notice of removal must be filed within thirty (30) days after the Defendants receive, by service or otherwise, a copy of the initial pleadings setting forth the Plaintiffs' claims, or, if the initial pleadings do not support removal, within thirty (30) days after the Defendants receive any pleading,

---

1 Defendants question whether the breach of contract/fraud claim can properly be filed in the same suit with the underlying tort action, because the breach of contract claim constitutes a wholly distinct and separate cause of action based on a completely independent set of facts. Therefore, Defendants contend that Plaintiffs should have filed a new lawsuit and that Defendants should have been properly served in that lawsuit.

motion or order which supports removal. *See* 28 U.S.C. §1446(b).   The initial cause of action and

related claims may not be removed more than one (1) year after the suit is commenced. *See id.*

A suit commences "where the Plaintiff files an amended complaint that so changes the nature of his

action as to constitute" a new suit which would begin on the day of the amendment. *See Wilson vs.*

*Intercollegiate (Big 10) Conference Athletic Association*, 668 Fed. 2d 962, 966 (7th Cir. 1982), *cert.*

*denied,* 459 U.S. 831 (1982); *Jenkins vs. Sandoz Pharmaceuticals Corp.*, 965 F. Supp. 861, 864-865

(N.D. Miss. 1997); *see also Cliatt vs. Scott,* 233 F.2d. 269, 270-71 (5th Cir. 1956)(holding although

defendant has submitted himself to state court jurisdiction on one cause of action, this does not

prevent his removing cause when entirely new and different cause of action is filed). The one year

time limitation for removal is not jurisdictional but procedural.  *See Tedford vs. Warner-Lambert*

*Co.,* 2003 W.L. 1798512 (5th Cir. 2003)(holding removal statute is not inflexible and conduct of

parties may affect whether it is equitable to strictly apply one year limit on removal);  *Barnes v.*

*Westinghouse Elec. Corp.,* 962 F.2d 513, 516 (5th Cir.), *cert. denied*, 506 U.S. 999 (1992) (holding

one-year limit expressed in §1446(b) "merely modal and formal and may be waived.").

**Removal**

11. The Court has diversity jurisdiction over Plaintiffs' Breach of Contract action.

Defendants timely filed this Notice of Removal.  Plaintiffs' contract/fraud action was commenced

less than one (1) year before this Notice was filed. Therefore, Plaintiffs' Breach of Contract action

should be heard by this Court. *See* 28 U.S.C. §1441 *et. seq.*

12. WHEREFORE, PREMISES CONSIDERED, Defendants Quigley Company, Inc. and

Pfizer Inc, respectfully pray that this Court take Notice of Removal and grant such other and

further relief to which Defendants may be entitled.

Respectfully submitted,



James H. Powers
TBN: 16217400
Sharla J. Frost
TBN: 07491100
POWERS & FROST, L.L.P.
2400 One Houston Center
1221 McKinney St.
Houston, Texas 77010
Telephone: (713) 767-1555
Facsimile: (713) 767-1799

**ATTORNEYS FOR DEFENDANTS,
QUIGLEY COMPANY, INC. AND PFIZER
INC**

## CERTIFICATE OF SERVICE

I hereby certify that a true and correct copy of Defendants' Notice of Removal has been forwarded to all known counsel of record via certified mail, return receipt requested and via facsimile on this 23rd day of April, 2003.

CAUSE NO. B-150,896-AF

| | | |
|---|---|---|
| SAMMY RAY ACKER, ET AL | § § | IN THE DISTRICT COURT OF |
| VS. | § § | JEFFERSON COUNTY, TEXAS |
| QUIGLEY CO., INC. AND PFIZER, INC. | § § | 60TH JUDICIAL DISTRICT |

## PLAINTIFFS' FIRST AMENDED PETITION

TO THE HONORABLE JUDGE OF SAID COURT:

COME NOW, Plaintiffs in the above-captioned matter and brings this their First Amended Petition and brings this their various causes of action against each and every Defendant and for their causes of action would show the Court as follows:

### JURISDICTION AND VENUE

1.      Jurisdiction is proper in this Court, the claim being in excess of the minimum jurisdictional limits of the Court. Venue has already been determined as proper and all parties are before the court for all purposes. Questions of fact or law common to all plaintiffs or defendants will arise in this action. The defendants are actively engaged in business in the State of Texas. All plaintiffs and/or their decedents are residents of Alabama.

### BACKGROUND FACTS

2.      During the course of their employment, Plaintiffs (including Plaintiffs' decedents) worked in and around furnaces, boilers, turbines and other industrial facilities in plants, mills, factories and buildings (hereinafter the "Plant Facilities") containing significant amounts of asbestos-containing products and materials.

3.      As a result of exposure to asbestos materials and products in the Plant Facilities, Plaintiffs contracted one or more asbestos-related diseases, have either contracted asbestos-related cancer or have an increased risk of contracting cancer, and suffer from cancerphobia or have died from one of these asbestos-related diseases as a result of asbestos exposure.

4.      The defendants herein are Quigley Co., Inc. and Pfizer, Inc (the "Defendants").



EXHIBIT
"A"

## Count One

5.     Plaintiffs' initial cause of action is grounded in the Alabama Extended Manufacturer's Liability Doctrine and is stated against the Defendants.

6.     The asbestos products and materials produced, manufactured, distributed, sold and/or specified by the Defendants and used or installed in or applied to the Plant Facilities and all worksites where all Plaintiffs worked were unreasonably dangerous when applied to their intended use in the usual and customary manner, and each Defendant caused the unreasonably dangerous materials and products to enter the market, as a proximate result of which Plaintiffs were exposed and suffered grave and progressive bodily injury.

7.     The asbestos products and materials produced, manufactured, distributed, sold and/or specified by each Defendant and used or installed in or applied to the Plant Facilities and worksites of all Plaintiffs were unreasonably dangerous when applied to their intended use in the usual and customary manner in that (a) the asbestos fibers contained in such products and materials are highly carcinogenic and otherwise injurious to the tissue of the human body when inhaled into the respiratory system or ingested into the digestive system, and (b) the asbestos fibers contained in such products and materials are fibrous by nature and increase in friability with exposure to heat or friction or by mere passage of time, so that such asbestos fibers are subject to being readily inhaled or ingested into the respiratory and digestive systems of persons in the vicinity thereof.

8.     Each Defendant knew or should have known in the exercise of ordinary care and diligence that such asbestos products and materials were unreasonably dangerous; nonetheless, each Defendant made no effort to recall the asbestos products and materials from any plants or buildings, including particularly the Plant Facilities. Each Defendant thus allowed Plaintiffs to be exposed to its asbestos products and materials without warning of the dangers thereof or preventive measures to protect the plaintiffs from exposure and as a proximate result of which the plaintiffs suffered grave and progressive bodily injury which each exposure was a producing cause and, in those cases in which such diseases do not include cancer, to have a greatly increased risk of contracting cancer, and to suffer from cancerphobia. Each Defendant is being sued as a product manufacturer and/or as an entity responsible for other manufacturers' of asbestos-containing products.

## Count Two

9.    Plaintiffs' second cause of action against each Defendant is grounded in wantonness and fraud by omission of material facts and/or suppression of material facts and intentional tort, including, without limitation, the tort of outrage, fraud, misrepresentation, and is stated also against the Defendant Premises Owners which occupied, controlled and/or owned certain of the premises in which Plaintiffs were exposed to asbestos products while employees or invitees on such premises.

## Count Three

10.    Plaintiffs' third cause of action is grounded in negligence, wantonness and/or intentional tort including fraud at common law and/or as referenced by Alabama Statute 6-5-100-104, battery and outrage carried out by each defendant who acted to commit the various torts against the plaintiffs which proximately resulted in all Plaintiffs' injuries.

11.    Each Defendant had a clear duty to warn the Plaintiffs of the hazard posed by exposure to asbestos fibers and no Defendant ever did warn Plaintiffs. They each intended to engage in the course of conduct complained of that resulted in injuries, and the course of conduct was known to them through their officers, directors, agents, servants, and managers.

12.    Their liability, therefore, is joint for all of the tortious conduct and resultant injuries, as well as for the wanton behavior of each Defendant.

13.    By reference, Plaintiffs reassert the causes of action and factual allegations of all preceding paragraphs.

14.    The Defendants acted with the intent to deceive and misinform Plaintiffs.

15.    The evidence destroyed by each of the defendants includes, without limitation, preliminary reports of toxicology and epidemiology studies, records of meetings between the agents and employees of the defendants, including those conducted under the auspices of trade associations, and records of plant and premise inspections reporting asbestos and other hazards.

16.    All the plaintiffs and others similarly situated were the targets of the intentional acts of deception and misrepresentation by each Defendant.

17.    The conduct of each Defendant based on presently available discovery began when each defendant made, manufactured or marketed an asbestos-containing product and continues until the present.

18.    The course of conduct of each Defendant continues to the present, and is exemplified by the destruction of studies and reports concerning the incidence of asbestos-related diseases in

refinery workers, the concealment from Plaintiffs and others similarly situated of their medical conditions, intentional misrepresentations of the health effects of asbestos dust inhalation, and the intellectually dishonest and fraudulent design of epidemiology, mortality and morbidity studies to fraudulently conceal the incidence of mesothelioma in refinery workers.

19.    In particular, each defendant, acting through its own medical department and trade association investigated the health hazards faced by workers, thereby learning or, in the exercise of reasonable care, had reason to learn of the hazards of asbestos.

20.    Acting maliciously, and with guile and deceit, each defendant did initially suppress and misrepresent the results of such investigations--actively concealing the information from customers, the users of the asbestos products, their own workers and the employees of contractors upon their premises, as well as from governmental and medical authorities--and ultimately attempted to destroy or alter records of such knowledge in order to prevent the scientific and medical evidence from being discovered by plaintiffs and to forestall regulatory efforts and legislation intended to protect innocent workers from the invisible dusty death.

21.    The acts of each defendant in furtherance of this deception were done intentionally or negligently to commit a tortious act, for example, to misrepresent to Plaintiffs and others similarly situated that asbestos was not hazardous, would not cause cancer, and was not present in the air regularly breathed by Plaintiffs in the presence of the defendant's products.

22.    Moreover, each defendant committed the tort of spoliation of evidence. Having determined that scientific and medical research they possessed or created or knew of was potentially damaging to their defense of meritorious claims such as each Defendant acted to destroy or conceal such information and prevent it from falling into the hands of its victims. That scurrilous conduct was an intentional interference with the plaintiffs' prospective civil action, being no less than a mutilation of the community's rational process of proof.

23.    By reference, Plaintiffs reassert the causes of action and factual allegations of the preceding paragraphs, noting that spoliation of evidence includes the destruction, alteration, or concealment of evidence germane to a claim or defense of a litigant.

24.    As a result of the above-described acts of each Defendant, the dangers of asbestos to the human respiratory and digestive systems were hidden from society in general, with the consequences (a) that asbestos products were installed in virtually every plant and building in the United States and a large part of the rest of the industrialized world, (b) that safe substitutes were

Rx Date/Time    APR-10-2003(THU) 21:14    409 833 8236    P.006

04/10/2003 21:15 FAX 409 833 8236    REAUD MORGAN & QUINN    ☑006

not developed by industry until after plants and buildings had already been made hazardous by the application or installation of numerous asbestos products, and (c) that a large number of people who have come into contact with asbestos have become ill or died as a result of the inhalation or ingestion of asbestos fibers. The plaintiffs herein were among those who worked in the hidden danger of asbestos, sometimes unaware of the presence of asbestos and always unaware of the carcinogenic and other adverse properties of asbestos fibers. In other words, all Plaintiffs at all times relevant herein relating to every cause of action that all Plaintiffs have brought, including, but not limited to, violations of the AEMLD, negligence, breaches of express and implied warranties, intentional tort, fraud, fraudulent suppression, spoliation of evidence, wantonness, gross negligence, and/or intentional tort, did not know nor should they have known of the dangers of asbestos and/or all defendant's asbestos-containing products nor that they had an asbestos-related disease or condition or injury caused by asbestos and/or all defendant's asbestos-containing products until diagnosed with said disease, condition or injury at all times less than two years prior to their bringing suit in these cases. This is commonly known in Texas as "The Discovery Rule." As a proximate consequence of the fraudulent acts of each defendant in suppressing evidence concerning the carcinogenic and other adverse properties of asbestos, some of which were installed in or applied to the Plant Facilities, Plaintiffs were caused to be exposed to, and were unable to protect themselves from, the asbestos fibers in their environment and thereby suffered grave and progressive bodily injury and, in those cases in which such diseases do not include cancer, to have a greatly increased risk of contracting cancer, and to suffer from cancerphobia.

Each Defendant had a legal duty to all Plaintiffs relating to informing them of the severe dangers of exposure to Defendant's asbestos-containing products which arises out of the fiduciary and/or confidential and/or special circumstances of this case and each Defendant's relationships direct and indirect with all the plaintiffs. Each Defendant either intentionally and/or recklessly and/or maliciously and/or with wantonness and/or with gross negligence and/or negligently failed to inform any and all Plaintiffs of material facts relating to the dangers of Defendant's asbestos-containing products, exposure thereto, risks involved with exposure and diseases arising there from. Each Defendant had vastly superior knowledge, if not a complete stranglehold on material facts and information suppressed and withheld by Defendants regarding the dangers of Defendant's asbestos-containing products as it relates to all Plaintiffs.

Plaintiffs had no knowledge in comparison to each Defendant of the dangers of any of Defendant's asbestos-containing products, during their exposure periods and times at the various work sites and plant facilities where Plaintiffs were exposed to said products.

The Defendant's knowledge of these dangers and the harm that could be perceived such as the imposition on the plaintiffs of asbestos-related diseases and death was unbelievably important to all Plaintiffs. Each Defendant induced all Plaintiffs to, including but not limited to, use, saw, buy, cut, be around and/or ingest asbestos fibers from their asbestos-containing poisonous products. By their fraud, failure to warn, and/or withholding of material facts so as to make continued tainted money and profits on the back of all injured Plaintiffs as listed in the hope that all their fraud would never come to the light of day, all Plaintiffs as listed relied to their detriment regarding the fraud of each Defendant and/or including, but not limited to, the suppression and concealment of material facts that each Defendant had a duty to disclose to all Plaintiffs and those similarly situated. This is clearly shown by the fact that all Plaintiffs have an asbestos-related disease or have suffered an asbestos-related death proximately caused by each Defendant's fraud, concealment, misrepresentation, and failure to warn regarding the dangers of their asbestos-containing products that each Defendant actually knew or should have known was dangerous or that Defendant was consciously and wantonly in disregard of.

As a proximate result and a producing cause of each Defendant's fraudulent conduct, Plaintiffs were proximately injured and damaged. All Plaintiffs bring suit for all damages proximately caused by each Defendant's fraud, including but not limited to, in the past and future pain and mental anguish, medical bills, loss of earning and earning capacity, physical and mental impairment, disfigurement, loss of consortium, loss of enjoyment of life and all other special, physical and mental damages caused by each Defendant's fraudulent conduct.

In addition, as a result of the incredible frauds, perpetrated by each Defendant relating to, at the least, its failure to disclose material facts, which each was under a duty to disclose, all Plaintiffs sue each Defendant for punitive damages because of their intentional, wanton, reckless, outrageous and grossly negligent conduct. Such damages are designed to make an example of each Defendant so that other such entities will refrain from such activities in the future.

In addition, all Plaintiffs seek recovery including but not limited to strict product liability, negligence, fraud, breach of express and implied warranties, intentional tort such as outrage and battery, for each Defendant's breaches of duties, failures to warn, suppression and withholding of

material facts, breach of the A. M. E. L. D. as previously referenced, and all other omissions and torts previously listed. Each Defendant had a clear duty to not injure the Plaintiffs arising out of their use, production, warranty, manufacturer and other facsimiles of their asbestos-containing products and each Defendant breached the various duties they had to all Plaintiffs as a result of their clear obligation to the plaintiffs and Plaintiffs were proximately injured and such injuries were proximately caused by said tortious conduct of each Defendant.

### Count Four

25.   Plaintiffs adopt, re-allege and incorporate by reference all of the above and foregoing paragraphs of this complaint as if fully set forth herein.

26.   Plaintiffs aver that the negligence and wantonness of each named defendant herein combined and concurred and, as a proximate consequence of the said combined and concurring negligence, Plaintiffs suffered grave and progressive bodily injury, have a greatly increased risk of contracting cancer, and suffer from cancerphobia, and therefore, the Defendants should be held jointly and severally liable to all Plaintiffs.

27.   Plaintiffs further aver that the defendant's actions, separately or together, were committed wantonly and were the result of conscious and reckless indifference to the welfare and safety of Plaintiffs, and, therefore, the defendants are guilty of negligence and wantonness for which they should be held liable in punitive and exemplary damages.

### Count Five

28.   Spouses of Plaintiffs and dependent widows of decedents (hereinafter "Plaintiff Spouses") adopt, re-allege and incorporate by reference all of the above and foregoing paragraphs of this complaint as if fully set forth herein.

29.   Plaintiff Spouses' cause of action for loss of services and consortium is based on the Alabama Manufacturers' Extended Liability Doctrine, combined and concurring negligence and intentional torts of each of the defendants named in this complaint.

30.   As a result of the actions of Defendants as hereinabove described, the plaintiffs and decedents were exposed to unreasonably dangerous, defective, negligently manufactured and marketed asbestos produced and materials and thereby sustained grave bodily injuries, which disabled Plaintiffs and decedents and made them incapable of performing spousal services and consortium, proximately causing Plaintiff Spouses to suffer loss of services and consortium and to suffer great emotional and mental stress.

## Count Six

31.    Plaintiffs' Estates and Plaintiffs' Dependents adopt, re-allege and incorporate by reference all of the above and foregoing paragraphs of this complaint as if fully set forth herein.

32.    The cause of action of Plaintiffs' Estates and Plaintiffs' Dependents for wrongful death is based on all causes of action asserted herein including but not limited to the Alabama Manufacturers' Extended Liability Doctrine, the Alabama Wrongful Death statute, combined and concurring negligence and intentional tort, fraud, battery, breach of express and implied warranties and outrage of each of the defendants named in this complaint.

33.    As a result of the actions of each Defendant as hereinabove described, the decedents were exposed to unreasonably dangerous, defective, negligently manufactured and marketed asbestos produced and materials and thereby sustained grave bodily injuries, causing their deaths. The deaths give rise to causes of action under the wrongful death and survival statutes of Alabama, or if a court were to decide that Texas Law applied, the wrongful death and survival statutes of Texas.

34.    Plaintiffs' Estates and Plaintiffs' Dependents further aver that the defendant's actions, separately or together, were committed wantonly and were the result of conscious and reckless indifference to the welfare and safety of decedents, and, therefore, the defendants are guilty of negligence and wantonness for which they should be held liable in punitive and exemplary damages.

35.    All Plaintiffs in relation to all causes of action as listed were proximately injured as a result of breaches of duty that each Defendant owed to all Plaintiffs. As a result of this proximate and producing cause of the each Defendant's tortious actions, all Plaintiffs sue for all damages available under the applicable laws of this case.

All wrongful death Plaintiffs sue for all damages available to them under the wrongful death statute of the applicable state's laws. In Alabama those would be punitive damages for each Defendant's wantonness in regards to Plaintiffs and the defendant's duties to Plaintiffs. If in the unlikely event the Texas wrongful death statute applies, Plaintiffs hereby invoke it in the alternative and ask for all damages available under said statutory provision for all injuries proximately caused by each Defendant's tortious conduct. In addition and in the alternative, all wrongful death plaintiffs sue for all injuries prior to death as a proximate result of each Defendant's fraud including, but not limited to in the past and future, all damages available for injuries prior to death under

Alabama's various laws and statutes, including, but not limited to pain and mental anguish, medical expenses and funeral and burial expenses and all other damages available under a survival claim as a proximate result of each Defendant's tortious conduct including fraud. In addition to and in the alternative, all wrongful death Plaintiffs sue for all injuries prior to their death as a result of each Defendant's fraud including, but not limited to, in the past and future, medical bills, pain and suffering, mental and physical anguish, impairment, disfigurement, loss of ability to enjoy life, loss of earning capacity and earnings, loss of consortium and all other damages available as a proximate result of each Defendant's fraud.

All other Plaintiffs sue for damages proximately caused as a result of all of the tortious conduct, as listed, by the defendants, and in their capacity as Plaintiffs and spouses seek recovery as it may relate to their specific case, in the past and future for loss of earning capacity, pain and mental anguish, medical bills and expenses in connection with their asbestos-related diseases, loss of society and consortium, disfigurement, physical and mental impairment and all other damages as the jury may find based upon the evidence.

All trial Plaintiffs and their spouses and estates seek individually and for each of their cases actual damages as listed throughout this petition. Additionally, as a result of the various intentional torts, grossly negligent torts, wanton torts, outrage torts and all other torts as listed for which Plaintiffs may receive punitive damages.

Plaintiffs also seek pre-judgment and post-judgment interest at the highest rate allowed by law, for costs of court, for reasonable attorney's fees, and any and all other related expenses such as Plaintiffs being forced to prove facts which Defendants would not admit to. Plaintiffs seek all damages from all Defendants, either singular and/or jointly and severally, for all damages and costs and expenses incurred as listed and for such other and further relief to which Plaintiffs may show themselves justly entitled.

36.    Plaintiffs also seek pre-judgment and post-judgment interest against each Defendant.

## Count Seven

37.    In the alternative, Defendants entered into a written contractual settlement agreement with all of the Plaintiffs in the cases styled *Robert L. Abernathy, et al vs. ACandS, Inc., et al* and *Inez Martin, et al vs. ACandS, Inc., et al* and all cases severed therefrom (the "Contract"). The Contract consists of eleven agreements between various Plaintiffs and the Defendants. A true and

Rx Date/Time    APR-10-2003(THU)  21:14          409 833 8236              P. 011
04/10/2003 21:16 FAX 409 833 8236          REAUD MORGAN & QUINN                    ☑011

correct copy of the Contract will be furnished *in camera* if necessary. Plaintiffs have satisfied all conditions precedent to the Contract.

38.    Defendants negotiated the settlement agreement through their agents, Michael K. Rozen of the Feinberg Group, L.L.P and Ronald B. Rubin of Rubin & Rubin.

39.    In reliance upon the representations of Mr. Rozin and/or Mr. Rubin, Plaintiffs' counsel, J. William Lewis, executed the Contract and forwarded it to Mr. Rubin for his signature. Mr. Rubin then executed the Contract and forwarded it to Mr. Rozen. After executing the Contract, Mr. Rubin informed Plaintiffs' counsel, Mr. Lewis, that the cases were settled.

40.    The first payment was due under the Contract on February 15, 2003. However, Defendants have not yet paid that amount. Therefore, Defendants have breached the Contract. Furthermore, Defendants Counsel, James Powers of POWERS & FROST, continues to file motions and prepare for trial in the cases that were settled pursuant to the Contract. Therefore, Defendants have also committed an anticipatory breach of the Contract.

41.    As a result of the Defendants' breach of contract, as set out in the preceding paragraphs of this petition, the Plaintiffs have sustained financial harm and have lost the benefits expected to be recovered from the Contract if Defendants had performed as promised. Plaintiffs' counsel has presented a claim for the amounts due under the Contract on several occasions and demanded payment from the Defendants. Because the Defendants have refused to honor the claim and pay the amount due as promised, the Plaintiffs ask for judgment against the Defendants for damages.

42.    Furthermore, the Defendants, Mr. Rozen and Mr. Rubin knowingly devised a scheme to defraud Plaintiffs by means of material, false and fraudulent pretenses, representations and promises. Mr. Rozen and/or Mr. Rubin executed the Contract despite knowing that Defendants had no intention of honoring their obligations.

43.    Defendants have engaged in fraudulent acts and practices in the conduct of their trade and business with Plaintiffs which were producing causes of the damages to Plaintiffs in the following respects:

(a)    That the Defendants would honor their obligations under the Contract, when in fact they did not; and

(b)    That the Defendants would pay each Plaintiff the amount agreed in the Contract, when in fact they did not.

Rx Date/Time   APR-10-2003(THU)  21:14        409 833 8236              P.012
04/10/2003 21:16 FAX 409 833 8236        REAUD MORGAN & QUINN                    ☑012

Each and every one of the representations was relied on by the Plaintiffs to Plaintiffs' substantial injury and damage. By reason of Plaintiffs' reliance upon Defendants', Mr. Rubin's, and Mr. Rozen's fraudulent representations described above, Plaintiffs have been damaged in an amount within the jurisdictional limits of this Court.

44.     Plaintiffs further allege that because Defendants, Mr. Rubin and Mr. Rozen knew that the representations described above were false at the time they were made, the representations were fraudulent and malicious and constitute conduct for which the law allows the imposition of exemplary damages. Accordingly, Plaintiffs requests that exemplary damages be awarded against the Defendants in a sum within the jurisdictional limits of the Court.

WHEREFORE, PREMISES CONSIDERED, Plaintiffs hereby demand judgment against the defendants jointly and severally as follows:

(1)    Judgment against Defendant for actual damages in an amount in excess of the minimum jurisdictional limits of the court;
(3)    Prejudgment interest as provided by law;
(4)    Post-judgment interest as provided by law;
(5)    Attorney's fees;
(6)    Costs of suit; and
(7)    Such other and further relief to which Plaintiff may be justly entitled.

Respectfully submitted,

**REAUD, MORGAN & QUINN, L.L.P.**
801 Laurel Street
P.O. Box 26005
Beaumont, Texas 77701-6005
(409) 838-1000
(409) 833-8236 (FAX)

By
Glen W. Morgan
Texas Bar No. 14438900

Lawyers for Plaintiff

Rx Date/Time      APR-10-2003(THU)   21:14          409 833 8236                P.013
04/10/2003 21:16 FAX 409 833 8236        REAUD MORGAN & QUINN                    ☑013

### CERTIFICATE OF SERVICE

I hereby certify that on the 10th day of April, 2003 I have served a true copy of the above and foregoing on the adverse parties by forwarding a copy of same to all opposing counsel herein.

Glen W. Morgan

## CAUSE NO. B-150,896-AF-_____

SAMMY RAY ACKER, ET AL      §      IN THE DISTRICT COURT OF

     §

Vs.      §      JEFFERSON COUNTY, TEXAS

     §

QUIGLEY CO., INC. AND PFIZER, INC.      §      60TH JUDICIAL DISTRICT

### SEVERED PLAINTIFFS' PETITION

TO THE HONORABLE JUDGE OF SAID COURT:

COME NOW, Plaintiffs in the above-captioned matter and brings this their Severed Petition and brings this their various causes of action against Quigley Co., Inc. and Pfizer, Inc. and for their causes of action would show the Court as follows:

I.

1.    Jurisdiction is proper in this Court, the claim being in excess of the minimum jurisdictional limits of the Court. Venue has already been determined as proper and all parties are before the court for all purposes. Questions of fact or law common to all plaintiffs or defendants will arise in this action. The Defendants are actively engaged in business in the State of Texas. All plaintiffs and/or their decedents are residents of Alabama.

II.

2.    Defendants entered into a written contractual settlement agreement with all of the Plaintiffs in the case styled *Inez Martin, et al vs. ACandS, Inc., et al* and all cases severed therefrom (the "Contract"). The Contract consists of eleven agreements between various Plaintiffs and the Defendants. A true and correct copy of the Contract will be furnished *in camera* if necessary. Plaintiffs have satisfied all conditions precedent to the Contract.

3.    Defendants negotiated the settlement agreement through their agents, Michael K. Rozen of the Feinberg Group, L.L.P and Ronald B. Rubin of Rubin & Rubin.

4.    In reliance upon the representations of Mr. Rozen and/or Mr. Rubin, Plaintiffs' counsel, J. William Lewis, executed the Contract and forwarded it to Mr. Rubin for his signature. Mr. Rubin then executed the Contract and forwarded it to Mr. Rozen. After executing the Contract, Mr. Rubin informed Plaintiffs' counsel, Mr. Lewis, that the cases were settled.



EXHIBIT
"B"

## III.

5.    The first payment was due under the Contract on February 15, 2003. However, Defendants have not yet paid that amount. Therefore, Defendants have breached the Contract. Furthermore, Defendants Counsel, James Powers of POWERS & FROST, continues to file motions and prepare for trial in the cases that were settled pursuant to the Contract. Therefore, Defendants have also committed an anticipatory breach of the Contract.

6.    As a result of the Defendants' breach of contract, as set out in the preceding paragraphs of this petition, the Plaintiffs have sustained financial harm and have lost the benefits expected to be recovered from the Contract if Defendants had performed as promised. Plaintiffs' counsel has presented a claim for the amounts due under the Contract on several occasions and demanded payment from the Defendants. Because the Defendants have refused to honor the claim and pay the amount due as promised, the Plaintiffs ask for judgment against the Defendants for damages.

## IV.

7.    Furthermore, the Defendants, Mr. Rozen and Mr. Rubin knowingly devised a scheme to defraud Plaintiffs by means of material, false and fraudulent pretenses, representations and promises. Mr. Rozen and/or Mr. Rubin executed the Contract despite knowing that Defendants had no intention of honoring their obligations.

8.    Defendants have engaged in fraudulent acts and practices in the conduct of their trade and business with Plaintiffs which were producing causes of the damages to Plaintiffs in the following respects:

(a)    That the Defendants would honor their obligations under the Contract, when in fact they did not; and

(b)    That the Defendants would pay each Plaintiff the amount agreed in the Contract, when in fact they did not.

Each and every one of the representations was relied on by the Plaintiffs to Plaintiffs' substantial injury and damage. By reason of Plaintiffs' reliance upon Defendants', Mr. Rubin's, and Mr. Rozen's fraudulent representations described above, Plaintiffs have been damaged in an amount within the jurisdictional limits of this Court.

9.    Plaintiffs further allege that because Defendants, Mr. Rubin and Mr. Rozen knew that the representations described above were false at the time they were made, the representations

were fraudulent and malicious and constitute conduct for which the law allows the imposition of exemplary damages. Accordingly, Plaintiffs request that exemplary damages be awarded against the Defendants in a sum within the jurisdictional limits of the Court.

WHEREFORE, PREMISES CONSIDERED, Plaintiffs hereby demand judgment against the defendants jointly and severally as follows:

(1)    Judgment against Defendant for actual damages in an amount in excess of the minimum jurisdictional limits of the court;

(3)    Prejudgment interest as provided by law;

(4)    Post-judgment interest as provided by law;

(5)    Attorney's fees;

(6)    Costs of suit; and

(7)    Such other and further relief to which Plaintiff may be justly entitled.

Respectfully submitted,

**REAUD, MORGAN & QUINN, L.L.P.**
801 Laurel Street
P.O. Box 26005
Beaumont, Texas 77701-6005
(409) 838-1000
(409) 833-8236 (FAX)

By: _____
        Glen W. Morgan
        Texas Bar No. 14438900

Lawyers for Plaintiff

### CERTIFICATE OF SERVICE

I hereby certify that on the 15th day of April, 2003, I have served a true copy of the above and foregoing on the adverse parties by forwarding a copy of same to all opposing counsel herein.

_____
Glen W. Morgan

## CAUSE NO. B-150,896-AF

| | | |
|---|---|---|
| SAMMY RAY ACKER, ET AL | § | IN THE DISTRICT COURT OF |
| | § | |
| VS. | § | JEFFERSON COUNTY, TEXAS |
| | § | |
| QUIGLEY CO., INC. AND PFIZER, INC. | § | 60TH JUDICIAL DISTRICT |

### PLAINTIFFS' SECOND AMENDED PETITION

TO THE HONORABLE JUDGE OF SAID COURT:

COME NOW, Plaintiffs in the above-captioned matter and brings this their Second Amended Petition and brings this their various causes of action against each and every Defendant and for their causes of action would show the Court as follows:

### JURISDICTION AND VENUE

1.      Jurisdiction is proper in this Court, the claim being in excess of the minimum jurisdictional limits of the Court. Venue has already been determined as proper and all parties are before the court for all purposes. Questions of fact or law common to all plaintiffs or defendants will arise in this action. The defendants are actively engaged in business in the State of Texas. All plaintiffs and/or their decedents are residents of Alabama.

### BACKGROUND FACTS

2.      During the course of their employment, Plaintiffs (including Plaintiffs' decedents) worked in and around furnaces, boilers, turbines and other industrial facilities in plants, mills, factories and buildings (hereinafter the "Plant Facilities") containing significant amounts of asbestos-containing products and materials.

3.      As a result of exposure to asbestos materials and products in the Plant Facilities, Plaintiffs contracted one or more asbestos-related diseases, have either contracted asbestos-related cancer or have an increased risk of contracting cancer, and suffer from cancerphobia or have died from one of these asbestos-related diseases as a result of asbestos exposure.

4.      The defendants herein are Quigley Co., Inc. and Pfizer, Inc (the "Defendants").

## Count One

5. Plaintiffs' initial cause of action is grounded in the Alabama Extended Manufacturer's Liability Doctrine and is stated against the Defendants.

6. The asbestos products and materials produced, manufactured, distributed, sold and/or specified by the Defendants and used or installed in or applied to the Plant Facilities and all worksites where all Plaintiffs worked were unreasonably dangerous when applied to their intended use in the usual and customary manner, and each Defendant caused the unreasonably dangerous materials and products to enter the market, as a proximate result of which Plaintiffs were exposed and suffered grave and progressive bodily injury.

7. The asbestos products and materials produced, manufactured, distributed, sold and/or specified by each Defendant and used or installed in or applied to the Plant Facilities and worksites of all Plaintiffs were unreasonably dangerous when applied to their intended use in the usual and customary manner in that (a) the asbestos fibers contained in such products and materials are highly carcinogenic and otherwise injurious to the tissue of the human body when inhaled into the respiratory system or ingested into the digestive system, and (b) the asbestos fibers contained in such products and materials are fibrous by nature and increase in friability with exposure to heat or friction or by mere passage of time, so that such asbestos fibers are subject to being readily inhaled or ingested into the respiratory and digestive systems of persons in the vicinity thereof.

8. Each Defendant knew or should have known in the exercise of ordinary care and diligence that such asbestos products and materials were unreasonably dangerous; nonetheless, each Defendant made no effort to recall the asbestos products and materials from any plants or buildings, including particularly the Plant Facilities. Each Defendant thus allowed Plaintiffs to be exposed to its asbestos products and materials without warning of the dangers thereof or preventive measures to protect the plaintiffs from exposure and as a proximate result of which the plaintiffs suffered grave and progressive bodily injury which each exposure was a producing cause and, in those cases in which such diseases do not include cancer, to have a greatly increased risk of contracting cancer, and to suffer from cancerphobia. Each Defendant is being sued as a product manufacturer and/or as an entity responsible for other manufacturers' of asbestos-containing products.

### Count Two

9.      Plaintiffs' second cause of action against each Defendant is grounded in wantonness and fraud by omission of material facts and/or suppression of material facts and intentional tort, including, without limitation, the tort of outrage, fraud, misrepresentation, and is stated also against the Defendant Premises Owners which occupied, controlled and/or owned certain of the premises in which Plaintiffs were exposed to asbestos products while employees or invitees on such premises.

### Count Three

10.     Plaintiffs' third cause of action is grounded in negligence, wantonness and/or intentional tort including fraud at common law and/or as referenced by Alabama Statute 6-5-100-104, battery and outrage carried out by each defendant who acted to commit the various torts against the plaintiffs which proximately resulted in all Plaintiffs' injuries.

11.     Each Defendant had a clear duty to warn the Plaintiffs of the hazard posed by exposure to asbestos fibers and no Defendant ever did warn Plaintiffs. They each intended to engage in the course of conduct complained of that resulted in injuries, and the course of conduct was known to them through their officers, directors, agents, servants, and managers.

12.     Their liability, therefore, is joint for all of the tortious conduct and resultant injuries, as well as for the wanton behavior of each Defendant.

13.     By reference, Plaintiffs reassert the causes of action and factual allegations of all preceding paragraphs.

14.     The Defendants acted with the intent to deceive and misinform Plaintiffs.

15.     The evidence destroyed by each of the defendants includes, without limitation, preliminary reports of toxicology and epidemiology studies, records of meetings between the agents and employees of the defendants, including those conducted under the auspices of trade associations, and records of plant and premise inspections reporting asbestos and other hazards.

16.     All the plaintiffs and others similarly situated were the targets of the intentional acts of deception and misrepresentation by each Defendant.

17.     The conduct of each Defendant based on presently available discovery began when each defendant made, manufactured or marketed an asbestos-containing product and continues until the present.

18.     The course of conduct of each Defendant continues to the present, and is exemplified by the destruction of studies and reports concerning the incidence of asbestos-related diseases in

refinery workers, the concealment from Plaintiffs and others similarly situated of their medical conditions, intentional misrepresentations of the health effects of asbestos dust inhalation, and the intellectually dishonest and fraudulent design of epidemiology, mortality and morbidity studies to fraudulently conceal the incidence of mesothelioma in refinery workers.

19.    In particular, each defendant, acting through its own medical department and trade association investigated the health hazards faced by workers, thereby learning or, in the exercise of reasonable care, had reason to learn of the hazards of asbestos.

20.    Acting maliciously, and with guile and deceit, each defendant did initially suppress and misrepresent the results of such investigations--actively concealing the information from customers, the users of the asbestos products, their own workers and the employees of contractors upon their premises, as well as from governmental and medical authorities--and ultimately attempted to destroy or alter records of such knowledge in order to prevent the scientific and medical evidence from being discovered by plaintiffs and to forestall regulatory efforts and legislation intended to protect innocent workers from the invisible dusty death.

21.    The acts of each defendant in furtherance of this deception were done intentionally or negligently to commit a tortious act, for example, to misrepresent to Plaintiffs and others similarly situated that asbestos was not hazardous, would not cause cancer, and was not present in the air regularly breathed by Plaintiffs in the presence of the defendant's products.

22.    Moreover, each defendant committed the tort of spoliation of evidence. Having determined that scientific and medical research they possessed or created or knew of was potentially damaging to their defense of meritorious claims such as each Defendant acted to destroy or conceal such information and prevent it from falling into the hands of its victims. That scurrilous conduct was an intentional interference with the plaintiffs' prospective civil action, being no less than a mutilation of the community's rational process of proof.

23.    By reference, Plaintiffs reassert the causes of action and factual allegations of the preceding paragraphs, noting that spoliation of evidence includes the destruction, alteration, or concealment of evidence germane to a claim or defense of a litigant.

24.    As a result of the above-described acts of each Defendant, the dangers of asbestos to the human respiratory and digestive systems were hidden from society in general, with the consequences (a) that asbestos products were installed in virtually every plant and building in the United States and a large part of the rest of the industrialized world, (b) that safe substitutes were

not developed by industry until after plants and buildings had already been made hazardous by the application or installation of numerous asbestos products, and (c) that a large number of people who have come into contact with asbestos have become ill or died as a result of the inhalation or ingestion of asbestos fibers. The plaintiffs herein were among those who worked in the hidden danger of asbestos, sometimes unaware of the presence of asbestos and always unaware of the carcinogenic and other adverse properties of asbestos fibers. In other words, all Plaintiffs at all times relevant herein relating to every cause of action that all Plaintiffs have brought, including, but not limited to, violations of the AEMLD, negligence, breaches of express and implied warranties, intentional tort, fraud, fraudulent suppression, spoliation of evidence, wantonness, gross negligence, and/or intentional tort, did not know nor should they have known of the dangers of asbestos and/or all defendant's asbestos-containing products nor that they had an asbestos-related disease or condition or injury caused by asbestos and/or all defendant's asbestos-containing products until diagnosed with said disease, condition or injury at all times less than two years prior to their bringing suit in these cases. This is commonly known in Texas as "The Discovery Rule." As a proximate consequence of the fraudulent acts of each defendant in suppressing evidence concerning the carcinogenic and other adverse properties of asbestos, some of which were installed in or applied to the Plant Facilities, Plaintiffs were caused to be exposed to, and were unable to protect themselves from, the asbestos fibers in their environment and thereby suffered grave and progressive bodily injury and, in those cases in which such diseases do not include cancer, to have a greatly increased risk of contracting cancer, and to suffer from cancerphobia.

Each Defendant had a legal duty to all Plaintiffs relating to informing them of the severe dangers of exposure to Defendant's asbestos-containing products which arises out of the fiduciary and/or confidential and/or special circumstances of this case and each Defendant's relationships direct and indirect with all the plaintiffs. Each Defendant either intentionally and/or recklessly and/or maliciously and/or with wantonness and/or with gross negligence and/or negligently failed to inform any and all Plaintiffs of material facts relating to the dangers of Defendant's asbestos-containing products, exposure thereto, risks involved with exposure and diseases arising there from. Each Defendant had vastly superior knowledge, if not a complete stranglehold on material facts and information suppressed and withheld by Defendants regarding the dangers of Defendant's asbestos-containing products as it relates to all Plaintiffs.

Plaintiffs had no knowledge in comparison to each Defendant of the dangers of any of Defendant's asbestos-containing products, during their exposure periods and times at the various work sites and plant facilities where Plaintiffs were exposed to said products.

The Defendant's knowledge of these dangers and the harm that could be perceived such as the imposition on the plaintiffs of asbestos-related diseases and death was unbelievably important to all Plaintiffs. Each Defendant induced all Plaintiffs to, including but not limited to, use, saw, buy, cut, be around and/or ingest asbestos fibers from their asbestos-containing poisonous products. By their fraud, failure to warn, and/or withholding of material facts so as to make continued tainted money and profits on the back of all injured Plaintiffs as listed in the hope that all their fraud would never come to the light of day, all Plaintiffs as listed relied to their detriment regarding the fraud of each Defendant and/or including, but not limited to, the suppression and concealment of material facts that each Defendant had a duty to disclose to all Plaintiffs and those similarly situated. This is clearly shown by the fact that all Plaintiffs have an asbestos-related disease or have suffered an asbestos-related death proximately caused by each Defendant's fraud, concealment, misrepresentation, and failure to warn regarding the dangers of their asbestos-containing products that each Defendant actually knew or should have known was dangerous or that Defendant was consciously and wantonly in disregard of.

As a proximate result and a producing cause of each Defendant's fraudulent conduct, Plaintiffs were proximately injured and damaged. All Plaintiffs bring suit for all damages proximately caused by each Defendant's fraud, including but not limited to, in the past and future pain and mental anguish, medical bills, loss of earning and earning capacity, physical and mental impairment, disfigurement, loss of consortium, loss of enjoyment of life and all other special, physical and mental damages caused by each Defendant's fraudulent conduct.

In addition, as a result of the incredible frauds, perpetrated by each Defendant relating to, at the least, its failure to disclose material facts, which each was under a duty to disclose, all Plaintiffs sue each Defendant for punitive damages because of their intentional, wanton, reckless, outrageous and grossly negligent conduct. Such damages are designed to make an example of each Defendant so that other such entities will refrain from such activities in the future.

In addition, all Plaintiffs seek recovery including but not limited to strict product liability, negligence, fraud, breach of express and implied warranties, intentional tort such as outrage and battery, for each Defendant's breaches of duties, failures to warn, suppression and withholding of

material facts, breach of the A. M. E. L. D. as previously referenced, and all other omissions and torts previously listed. Each Defendant had a clear duty to not injure the Plaintiffs arising out of their use, production, warranty, manufacturer and other facsimiles of their asbestos-containing products and each Defendant breached the various duties they had to all Plaintiffs as a result of their clear obligation to the plaintiffs and Plaintiffs were proximately injured and such injuries were proximately caused by said tortious conduct of each Defendant.

### Count Four

25. Plaintiffs adopt, re-allege and incorporate by reference all of the above and foregoing paragraphs of this complaint as if fully set forth herein.

26. Plaintiffs aver that the negligence and wantonness of each named defendant herein combined and concurred and, as a proximate consequence of the said combined and concurring negligence, Plaintiffs suffered grave and progressive bodily injury, have a greatly increased risk of contracting cancer, and suffer from cancerphobia, and therefore, the Defendants should be held jointly and severally liable to all Plaintiffs.

27. Plaintiffs further aver that the defendant's actions, separately or together, were committed wantonly and were the result of conscious and reckless indifference to the welfare and safety of Plaintiffs, and, therefore, the defendants are guilty of negligence and wantonness for which they should be held liable in punitive and exemplary damages.

### Count Five

28. Spouses of Plaintiffs and dependent widows of decedents (hereinafter "Plaintiff Spouses") adopt, re-allege and incorporate by reference all of the above and foregoing paragraphs of this complaint as if fully set forth herein.

29. Plaintiff Spouses' cause of action for loss of services and consortium is based on the Alabama Manufacturers' Extended Liability Doctrine, combined and concurring negligence and intentional torts of each of the defendants named in this complaint.

30. As a result of the actions of Defendants as hereinabove described, the plaintiffs and decedents were exposed to unreasonably dangerous, defective, negligently manufactured and marketed asbestos produced and materials and thereby sustained grave bodily injuries, which disabled Plaintiffs and decedents and made them incapable of performing spousal services and consortium, proximately causing Plaintiff Spouses to suffer loss of services and consortium and to suffer great emotional and mental stress.

## Count Six

31.    Plaintiffs' Estates and Plaintiffs' Dependents adopt, re-allege and incorporate by reference all of the above and foregoing paragraphs of this complaint as if fully set forth herein.

32.    The cause of action of Plaintiffs' Estates and Plaintiffs' Dependents for wrongful death is based on all causes of action asserted herein including but not limited to the Alabama Manufacturers' Extended Liability Doctrine, the Alabama Wrongful Death statute, combined and concurring negligence and intentional tort, fraud, battery, breach of express and implied warranties and outrage of each of the defendants named in this complaint.

33.    As a result of the actions of each Defendant as hereinabove described, the decedents were exposed to unreasonably dangerous, defective, negligently manufactured and marketed asbestos produced and materials and thereby sustained grave bodily injuries, causing their deaths. The deaths give rise to causes of action under the wrongful death and survival statutes of Alabama, or if a court were to decide that Texas Law applied, the wrongful death and survival statutes of Texas.

34.    Plaintiffs' Estates and Plaintiffs' Dependents further aver that the defendant's actions, separately or together, were committed wantonly and were the result of conscious and reckless indifference to the welfare and safety of decedents, and, therefore, the defendants are guilty of negligence and wantonness for which they should be held liable in punitive and exemplary damages.

35.    All Plaintiffs in relation to all causes of action as listed were proximately injured as a result of breaches of duty that each Defendant owed to all Plaintiffs. As a result of this proximate and producing cause of the each Defendant's tortious actions, all Plaintiffs sue for all damages available under the applicable laws of this case.

All wrongful death Plaintiffs sue for all damages available to them under the wrongful death statute of the applicable state's laws. In Alabama those would be punitive damages for each Defendant's wantonness in regards to Plaintiffs and the defendant's duties to Plaintiffs. If in the unlikely event the Texas wrongful death statute applies, Plaintiffs hereby invoke it in the alternative and ask for all damages available under said statutory provision for all injuries proximately caused by each Defendant's tortious conduct. In addition and in the alternative, all wrongful death plaintiffs sue for all injuries prior to death as a proximate result of each Defendant's fraud including, but not limited to in the past and future, all damages available for injuries prior to death under

Alabama's various laws and statutes, including, but not limited to pain and mental anguish, medical expenses and funeral and burial expenses and all other damages available under a survival claim as a proximate result of each Defendant's tortious conduct including fraud. In addition to and in the alternative, all wrongful death Plaintiffs sue for all injuries prior to their death as a result of each Defendant's fraud including, but not limited to, in the past and future, medical bills, pain and suffering, mental and physical anguish, impairment, disfigurement, loss of ability to enjoy life, loss of earning capacity and earnings, loss of consortium and all other damages available as a proximate result of each Defendant's fraud.

All other Plaintiffs sue for damages proximately caused as a result of all of the tortious conduct, as listed, by the defendants, and in their capacity as Plaintiffs and spouses seek recovery as it may relate to their specific case, in the past and future for loss of earning capacity, pain and mental anguish, medical bills and expenses in connection with their asbestos-related diseases, loss of society and consortium, disfigurement, physical and mental impairment and all other damages as the jury may find based upon the evidence.

All trial Plaintiffs and their spouses and estates seek individually and for each of their cases actual damages as listed throughout this petition. Additionally, as a result of the various intentional torts, grossly negligent torts, wanton torts, outrage torts and all other torts as listed for which Plaintiffs may receive punitive damages.

Plaintiffs also seek pre-judgment and post-judgment interest at the highest rate allowed by law, for costs of court, for reasonable attorney's fees, and any and all other related expenses such as Plaintiffs being forced to prove facts which Defendants would not admit to. Plaintiffs seek all damages from all Defendants, either singular and/or jointly and severally, for all damages and costs and expenses incurred as listed and for such other and further relief to which Plaintiffs may show themselves justly entitled.

36.     Plaintiffs also seek pre-judgment and post-judgment interest against each Defendant.

WHEREFORE, PREMISES CONSIDERED, Plaintiffs hereby demand judgment against the defendants jointly and severally as follows:

(1)     Judgment against Defendant for actual damages in an amount in excess of the minimum jurisdictional limits of the court;

(3)     Prejudgment interest as provided by law;

(4)     Post-judgment interest as provided by law;

(5)     Attorney's fees;

(6)     Costs of suit; and

(7)      Such other and further relief to which Plaintiff may be justly entitled.

Respectfully submitted,

**REAUD, MORGAN & QUINN, L.L.P.**
801 Laurel Street
P.O. Box 26005
Beaumont, Texas 77701-6005
(409) 838-1000
(409) 833-8236 (FAX)

By: _____
        Glen W. Morgan
        Texas Bar No. 14438900

Lawyers for Plaintiff

## CERTIFICATE OF SERVICE

    I hereby certify that on the 15th day of April, 2003 I have served a true copy of the above and foregoing on the adverse parties by forwarding a copy of same to all opposing counsel herein.

_____
Glen W. Morgan

CAUSE NO. B-150,896-AF

| | | |
|---|---|---|
| SAMMY RAY ACKER, ET AL | § | IN THE DISTRICT COURT OF |
| | § | |
| VS. | § | JEFFERSON COUNTY, TEXAS |
| | § | |
| QUIGLEY CO., INC. AND PFIZER, INC. | § | 60TH JUDICIAL DISTRICT |

## PLAINTIFFS' MOTION TO SEVER BREACH OF CONTRACT AND FRAUD CLAIMS AGAINST QUIGLEY CO., INC. AND PFIZER, INC.

TO THE HONORABLE JUDGE OF SAID COURT:

COME NOW, *Sammy Ray Acker, et al*, Plaintiffs, in the above styled and numbered cause and bring this their Motion to Sever Breach of Contract and Fraud Claims Against Quigley Co., Inc. and Pfizer, Inc. and in support thereof would show the court as follows:

I.

Plaintiffs on Exhibit "A" request that the Court sever their claims for breach of contract and fraud against Quigley Co., Inc. and Pfizer, Inc. and list them in a single new cause number styled B-150-896-AF-____; *Sammy Ray Acker, et al vs. Quigley Co., Inc. et al,* so as to prevent confusion at the District Clerk's office and/or any other circumstances related to this matter.

WHEREFORE, PREMISES CONSIDERED, Plaintiffs respectfully request this Court to sever Plaintiffs' claims for breach of contract and fraud against Quigley Co., Inc. and Pfizer, Inc. from Cause No. B-150,896-AF and list them in a single new cause number and for such other and further relief to which Plaintiffs may be entitled to receive.

Respectfully submitted,

REAUD, MORGAN & QUINN, L.L.P.
801 Laurel Street
P.O. Box 26005
Beaumont, Texas 77701-6005
(409) 838-1000
(409) 833-8236 (FAX)

By. _____
     Glen W. Morgan
     Texas Bar No. 14438900

Lawyers for Plaintiff

## CERTIFICATE OF SERVICE

I hereby certify that on the 15th day of April, 2003, I have served a true copy of the above and foregoing on the adverse parties by forwarding a copy of same to all opposing counsel herein.

_____
Glen W. Morgan